UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE KALADISH | : |
| Plaintiff | : CIVIL ACTION NO. |
| V. | : 3:00CV854 (CFD) |
| UNIROYAL, INC. AND UNIROYAL HOLDING, INC., | : |
| Defendants | : |

NOTICE OF NEW AUTHORITY

As set forth in the Joint Status Report filed in this matter on or about July 22, 2004, there are currently three motions, all filed by defendants, pending before this court, primarily defendants' Motion for Summary Judgment, dated October 29, 2002, relating to all counts of the Amended Complaint, and two motions related to and arising in connection with said Motion (Motion to Strike Plaintiffs Denials and Limitations, dated December 23, 2002 and Motion to Strike the Declaration and Expert Report of Michael Bartos, dated December 23, 2002).

On Monday, December 13, 2004, the Supreme Court of the United States issued its decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. ___ (2004) (case No. 02-1192, copy attached) in which it held that a liable party under CERCLA Section 107 cannot file an action seeking contribution from other parties potentially liable under CERCLA Section 107 pursuant to CERCLA Section 113(f) unless the party seeking contribution does so during or following any civil action under section 106 or 107(a) of CERCLA. This decision is relevant to Plaintiff's claim for contribution pursuant to CERCLA section 113(f) contained in the Amended Complaint in this action. Defendants request that this court consider this new authority in ruling

on the pending Summary Judgment Motion regarding plaintiff's CERCLA section 113 contribution claim.

                              Respectfully Submitted,
                              Defendants Uniroyal, Inc. and
                              Uniroyal Holding, Inc.

By: _____
      Susan H. Shumway
      Shumway & Spencer, LLC
      59 Wilton Road
      Westport, CT 06880
      Shumwaysus@aol.com
      203-221-8710
      #ct03102

Cite as: 543 U. S. ____ (2004) 1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 02–1192

## COOPER INDUSTRIES, INC., PETITIONER v. AVIALL SERVICES, INC.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[December 13, 2004]

JUSTICE THOMAS delivered the opinion of the Court.

Section 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA)[1] allows persons who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other parties liable under CERCLA. Section 113(f)(1) specifies that a party may obtain contribution "during or following any civil action" under CERCLA §106 or §107(a). The issue we must decide is whether a private party who has not been sued under §106 or §107(a) may nevertheless obtain contribution under §113(f)(1) from other liable parties. We hold that it may not.

I

Under CERCLA, 94 Stat. 2767, the Federal Government may clean up a contaminated area itself, see §104, or it may compel responsible parties to perform the cleanup,

---

[1] Section 113(f)(1) is codified at 42 U. S. C. §9613(f)(1). We refer throughout, for the most part, to sections of CERCLA rather than the U. S. Code.

2   COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

Opinion of the Court

see §106(a). See *Key Tronic Corp.* v. *United States,* 511 U. S. 809, 814 (1994). In either case, the Government may recover its response costs under §107, 42 U. S. C. §9607 (2000 ed. and Supp. I), the "cost recovery" section of CERCLA. Section 107(a) lists four classes of potentially responsible persons (PRPs) and provides that they "shall be liable" for, among other things, "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." §107(a)(4)(A).[2] Section 107(a) further provides that PRPs shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." §107(a)(4)(B).

After CERCLA's enactment in 1980, litigation arose over whether §107, in addition to allowing the Government and certain private parties to recover costs from PRPs, also allowed a PRP that had incurred response costs to recover costs from other PRPs. More specifically, the question was whether a private party that had incurred response costs, but that had done so voluntarily and was not itself subject to suit, had a cause of action for cost recovery against other PRPs. Various courts held that §107(a)(4)(B) and its predecessors authorized such a cause of action. See, *e.g., Wickland Oil Terminals* v. *Asarco, Inc.,* 792 F. 2d 887, 890–892 (CA9 1986); *Walls* v. *Waste Resource Corp.,* 761 F. 2d 311, 317–318 (CA6 1985); *Philadelphia* v. *Stepan Chemical Co.,* 544 F. Supp. 1135, 1140–1143 (ED Pa. 1982).

After CERCLA's passage, litigation also ensued over the separate question whether a private entity that had been sued in a cost recovery action (by the Government or by

---

[2] The national contingency plan specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency (EPA) pursuant to CERCLA §105, 42 U. S. C. §9605 (2000 ed. and Supp. I). The plan is codified at 40 CFR pt. 300 (2004).

another PRP) could obtain contribution from other PRPs. As originally enacted in 1980, CERCLA contained no provision expressly providing for a right of action for contribution. A number of District Courts nonetheless held that, although CERCLA did not mention the word "contribution," such a right arose either impliedly from provisions of the statute, or as a matter of federal common law. See, *e.g.*, *United States* v. *New Castle County*, 642 F. Supp. 1258, 1263–1269 (Del. 1986) (contribution right arises under federal common law); *Colorado* v. *ASARCO, Inc.*, 608 F. Supp. 1484, 1486–1493 (Colo. 1985) (same); *Wehner* v. *Syntex Agribusiness, Inc.*, 616 F. Supp. 27, 31 (ED Mo. 1985) (contribution right is implied from §107(e)(2)). That conclusion was debatable in light of two decisions of this Court that refused to recognize implied or common-law rights to contribution in other federal statutes. See *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630, 638–647 (1981) (refusing to recognize implied or common-law right to contribution in the Sherman Act or the Clayton Act); *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U. S. 77, 90–99 (1981) (refusing to recognize implied or common-law right to contribution in the Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964).

Congress subsequently amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986 (SARA), 100 Stat. 1613, to provide an express cause of action for contribution, codified as CERCLA §113(f)(1):

> "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.

4      COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

Opinion of the Court

In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." *Id.*, at 1647, as codified in 42 U. S. C. §9613(f)(1).

SARA also created a separate express right of contribution, §113(f)(3)(B), for "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." In short, after SARA, CERCLA provided for a right to cost recovery in certain circumstances, §107(a), and separate rights to contribution in other circumstances, §§113(f)(1), 113(f)(3)(B).[3]

II

This case concerns four contaminated aircraft engine maintenance sites in Texas. Cooper Industries, Inc., owned and operated those sites until 1981, when it sold them to Aviall Services, Inc. Aviall operated the four sites for a number of years. Ultimately, Aviall discovered that both it and Cooper had contaminated the facilities when petroleum and other hazardous substances leaked into the ground and ground water through underground storage tanks and spills.

Aviall notified the Texas Natural Resource Conservation Commission (Commission) of the contamination. The

---

[3] In *Key Tronic Corp.* v. *United States*, 511 U. S. 809 (1994), we observed that §107 and §113 created "similar and somewhat overlapping" remedies. *Id.*, at 816. The cost recovery remedy of §107(a)(4)(B) and the contribution remedy of §113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct.

Cite as: 543 U. S. ____ (2004)      5

Opinion of the Court

Commission informed Aviall that it was violating state environmental laws, directed Aviall to clean up the site, and threatened to pursue an enforcement action if Aviall failed to undertake remediation. Neither the Commission nor the EPA, however, took judicial or administrative measures to compel cleanup.

Aviall cleaned up the properties under the State's supervision, beginning in 1984. Aviall sold the properties to a third party in 1995 and 1996, but remains contractually responsible for the cleanup. Aviall has incurred approximately $5 million in cleanup costs; the total costs may be even greater. In August 1997, Aviall filed this action against Cooper in the United States District Court for the Northern District of Texas, seeking to recover cleanup costs. The original complaint asserted a claim for cost recovery under CERCLA §107(a), a separate claim for contribution under CERCLA §113(f)(1), and state-law claims. Aviall later amended the complaint, combining its two CERCLA claims into a single, joint CERCLA claim. That claim alleged that, pursuant to §113(f)(1), Aviall was entitled to seek contribution from Cooper, as a PRP under §107(a), for response costs and other liability Aviall incurred in connection with the Texas facilities.[4] Aviall continued to assert state-law claims as well.

Both parties moved for summary judgment, and the District Court granted Cooper's motion. The court held that Aviall, having abandoned its §107 claim, sought contribution only under §113(f)(1). The court held that §113(f)(1) relief was unavailable to Aviall because it had

---

[4] Aviall asserts that it framed its claim in the manner compelled by Fifth Circuit precedent holding that a §113 claim is a type of §107 claim. *Geraghty & Miller, Inc.* v. *Conoco, Inc.*, 234 F. 3d 917, 924 (CA5 2000); see also, e.g., *Centerior Serv. Co.* v. *Acme Scrap Iron & Metal Corp.*, 153 F. 3d 344, 349–353 (CA6 1998); *Sun Co., Inc.* v. *Browning-Ferris, Inc.*, 124 F. 3d 1187, 1191 (CA10 1997); *Pinal Creek Group* v. *Newmont Mining Corp.*, 118 F. 3d 1298, 1301–1302 (CA9 1997).

6     COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

Opinion of the Court

not been sued under CERCLA §106 or §107. Having dismissed Aviall's federal claim, the court declined to exercise jurisdiction over the state-law claims.

A divided panel of the Court of Appeals for the Fifth Circuit affirmed. 263 F. 3d 134 (2001). The majority, relying principally on the "during or following" language in the first sentence of §113(f)(1), held that "a PRP seeking contribution from other PRPs under §113(f)(1) must have a pending or adjudged §106 administrative order or §107(a) cost recovery action against it." *Id.*, at 145. The dissent reasoned that the final sentence of §113(f)(1), the saving clause, clarified that the federal common-law right to contribution survived the enactment of §113(f)(1), even absent a §106 or §107(a) civil action. *Id.*, at 148–150 (opinion of Wiener, J.).

On rehearing en banc, the Fifth Circuit reversed by a divided vote, holding that §113(f)(1) allows a PRP to obtain contribution from other PRPs regardless of whether the PRP has been sued under §106 or §107. 312 F. 3d 677 (2002). The court held that "[s]ection 113(f)(1) authorizes suits against PRPs in both its first and last sentence[,] which states without qualification that 'nothing' in the section shall 'diminish' any person's right to bring a contribution action in the absence of a section 106 or section 107(a) action." *Id.*, at 681. The court reasoned in part that "may" in §113(f)(1) did not mean "may only." *Id.*, at 686–687. Three members of the en banc court dissented for essentially the reasons given by the panel majority. *Id.*, at 691–693 (opinion of Garza, J.). We granted certiorari, 540 U. S. 1099, and now reverse.

III
A

Section 113(f)(1) does not authorize Aviall's suit. The first sentence, the enabling clause that establishes the right of contribution, provides: "Any person *may* seek

Cite as: 543 U. S. ____ (2004)      7

Opinion of the Court

contribution . . . *during or following* any civil action under section 9606 of this title or under section 9607(a) of this title," 42 U. S. C. §9613(f)(1) (emphasis added). The natural meaning of this sentence is that contribution may only be sought subject to the specified conditions, namely, "during or following" a specified civil action.

Aviall answers that "may" should be read permissively, such that "during or following" a civil action is one, but not the exclusive, instance in which a person may seek contribution. We disagree. First, as just noted, the natural meaning of "may" in the context of the enabling clause is that it authorizes certain contribution actions—ones that satisfy the subsequent specified condition—and no others.

Second, and relatedly, if §113(f)(1) were read to authorize contribution actions at any time, regardless of the existence of a §106 or §107(a) civil action, then Congress need not have included the explicit "during or following" condition. In other words, Aviall's reading would render part of the statute entirely superfluous, something we are loath to do. See, *e.g., Hibbs* v. *Winn*, 542 U. S. ___, ___ (2004) (slip op., at 10). Likewise, if §113(f)(1) authorizes contribution actions at any time, §113(f)(3)(B), which permits contribution actions after settlement, is equally superfluous. There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions.

The last sentence of §113(f)(1), the saving clause, does not change our conclusion. That sentence provides: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." 42 U. S. C. §9613(f)(1). The sole function of the sentence is to clarify that §113(f)(1) does nothing to "diminish" any cause(s) of action for contribution that may exist independently of §113(f)(1). In other words, the

sentence rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP. The sentence, however, does not itself establish a cause of action; nor does it expand §113(f)(1) to authorize contribution actions not brought "during or following" a §106 or §107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside §113(f)(1). Reading the saving clause to authorize §113(f)(1) contribution actions not just "during or following" a civil action, but also before such an action, would again violate the settled rule that we must, if possible, construe a statute to give every word some operative effect. See *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 35–36 (1992).

Our conclusion follows not simply from §113(f)(1) itself, but also from the whole of §113. As noted above, §113 provides two express avenues for contribution: §113(f)(1) ("during or following" specified civil actions) and §113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State). Section 113(g)(3) then provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, §113(g)(3)(A), and one beginning at the date of settlement, §113(g)(3)(B). Notably absent from §113(g)(3) is any provision for starting the limitations period if a judgment or settlement never occurs, as is the case with a purely voluntary cleanup. The lack of such a provision supports the conclusion that, to assert a contribution claim under §113(f), a party must satisfy the conditions of either §113(f)(1) or §113(f)(3)(B).

Each side insists that the purpose of CERCLA bolsters its reading of §113(f)(1). Given the clear meaning of the text, there is no need to resolve this dispute or to consult the purpose of CERCLA at all. As we have said: "[I]t is ultimately the provisions of our laws rather than the

principal concerns of our legislators by which we are governed." *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U. S. 75, 79 (1998). Section 113(f)(1), 100 Stat. 1647, authorizes contribution claims only "during or following" a civil action under §106 or §107(a), and it is undisputed that Aviall has never been subject to such an action.[5] Aviall therefore has no §113(f)(1) claim.

B

Aviall and *amicus* Lockheed Martin contend that, in the alternative to an action for contribution under §113(f)(1), Aviall may recover costs under §107(a)(4)(B) even though it is a PRP. The dissent would have us so hold. We decline to address the issue. Neither the District Court, nor the Fifth Circuit panel, nor the Fifth Circuit sitting en banc considered Aviall's §107 claim. In fact, as noted above, Aviall included separate §107 and §113 claims in its original complaint, but then asserted a "combined" §107/§113 claim in its amended complaint. The District Court took this consolidated claim to mean that Aviall was relying on §107 "not as an independent cause of action," but only "to the extent necessary to maintain a viable §113(f)(1) contribution claim." Civ. Action No. 3:97–CV–1926–D (ND Tex., Jan. 13, 2000), App. to Pet. for Cert. 94a, n. 2. Consequently the court saw no need to address any freestanding §107 claim. The Fifth Circuit panel likewise concluded that Aviall no longer advanced a standalone §107 claim. 263 F. 3d, at 137, n. 2. The en banc court found it unnecessary to decide whether Aviall had waived the §107 claim, because it held that Aviall could rely instead on §113. 312 F. 3d, at 685, n. 15. Thus, the court did not address the waiver issue, let alone the merits

---

[5] Neither has Aviall been subject to an administrative order under §106; thus, we need not decide whether such an order would qualify as a "civil action under section 9606 . . . or under section 9607(a)" of CERCLA. 42 U. S. C. §9613(f)(1).

10   COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

Opinion of the Court

of the §107 claim.

"We ordinarily do not decide in the first instance issues not decided below." *Adarand Constructors, Inc.* v. *Mineta,* 534 U. S. 103, 109 (2001) *(per curiam)* (internal quotation marks omitted). Although we have deviated from this rule in exceptional circumstances, *United States* v. *Mendenhall,* 446 U. S. 544, 551–552, n. 5 (1980), the circumstances here cut *against* resolving the §107 claim. Both the question whether Aviall has waived this claim and the underlying §107 question (if it is not waived) may depend in part on the relationship between §§107 and 113. That relationship is a significant issue in its own right. It is also well beyond the scope of the briefing and, indeed, the question presented, which asks simply whether a private party "may bring an action seeking contribution pursuant to CERCLA Section 113(f)(1)." Pet. for Cert. i. The §107 claim and the preliminary waiver question merit full consideration by the courts below.

Furthermore, the parties cite numerous decisions of the Courts of Appeals as holding that a private party that is itself a PRP may not pursue a §107(a) action against other PRPs for joint and several liability. See, *e.g., Bedford Affiliates* v. *Sills,* 156 F. 3d 416, 423–424 (CA2 1998); *Centerior Serv. Co.* v. *Acme Scrap Iron & Metal Corp.,* 153 F. 3d 344, 349–356 (CA6 1998); *Pneumo Abex Corp.* v. *High Point, T. & D. R. Co.,* 142 F. 3d 769, 776 (CA4 1998); *Pinal Creek Group* v. *Newmont Mining Corp.,* 118 F. 3d 1298, 1301–1306 (CA9 1997); *New Castle County* v. *Halliburton NUS Corp.,* 111 F. 3d 1116, 1120–1124 (CA3 1997); *Redwing Carriers, Inc.* v. *Saraland Apartments,* 94 F. 3d 1489, 1496, and n. 7 (CA11 1996); *United States* v. *Colorado & E. R. Co.,* 50 F. 3d 1530, 1534–1536 (CA10 1995); *United Technologies Corp.* v. *Browning-Ferris Industries,* 33 F. 3d 96, 98–103 (CA1 1994). To hold here that Aviall may pursue a §107 action, we would have to consider whether these decisions are correct, an issue that Aviall has flagged but not briefed. And we

Cite as: 543 U. S. ____ (2004)         11

Opinion of the Court

might have to consider other issues, also not briefed, such as whether Aviall, which seeks to recover the share of its cleanup costs fairly chargeable to Cooper, may pursue a §107 cost recovery action for some form of liability other than joint and several. We think it more prudent to withhold judgment on these matters.

In view of the importance of the §107 issue and the absence of briefing and decisions by the courts below, we are not prepared—as the dissent would have it—to resolve the §107 question solely on the basis of dictum in *Key Tronic*. We held there that certain attorney's fees were not "necessary costs of response" within the meaning of §107(a)(4)(B). 511 U. S., at 818–821. But we did not address the relevance, if any, of Key Tronic's status as a PRP or confront the relationship between §§107 and 113. In discussing §107, we did not even classify it precisely as a right of cost recovery or a right of contribution, as the dissent's descriptions of the decision reveal. *Post*, at 1–2 (opinion of GINSBURG, J.) (describing *Key Tronic* as recognizing a right to "'seek recovery of cleanup costs'" (quoting 511 U. S., at 818), but in the following paragraph saying that *Key Tronic* identified a "right to contribution"). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster* v. *Fall*, 266 U. S. 507, 511 (1925). Aviall itself recognizes the need for fuller examination of the §107 claim; it has simply requested that we remand for consideration of that claim, not that we resolve the claim in the first instance.

C

In addition to leaving open whether Aviall may seek cost recovery under §107, Part III–B, *supra*, we decline to decide whether Aviall has an implied right to contribution under §107. Portions of the Fifth Circuit's opinion below might be taken to endorse the latter cause of action, 312

12    COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

Opinion of the Court

F. 3d, at 687; others appear to reserve the question whether such a cause of action exists, *id.*, at 685, n. 15. To the extent that Aviall chooses to frame its §107 claim on remand as an implied right of contribution (as opposed to a right of cost recovery),[6] we note that this Court has visited the subject of implied rights of contribution before. See *Texas Industries*, 451 U. S., at 638–647; *Northwest Airlines*, 451 U. S., at 90–99. We also note that, in enacting §113(f)(1), Congress explicitly recognized a particular set (claims "during or following" the specified civil actions) of the contribution rights previously implied by courts from provisions of CERCLA and the common law. Cf. *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U. S. 11, 19 (1979). Nonetheless, we need not and do not decide today whether any judicially implied right of contribution survived the passage of SARA.

\*    \*    \*

We hold only that §113(f)(1) does not support Aviall's suit. We therefore reverse the judgment of the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

---

[6] As noted above, we do not address whether a §107 cost recovery action by Aviall (if not waived) may seek some form of liability other than joint and several.

Cite as: 543 U. S. ____ (2004)          1

GINSBURG, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 02-1192

## COOPER INDUSTRIES, INC., PETITIONER v. AVIALL SERVICES, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[December 13, 2004]

JUSTICE GINSBURG, with whom JUSTICE STEVENS joins, dissenting.

Aviall Services, Inc., purchased from Cooper Industries, Inc., property that was contaminated with hazardous substances. Shortly after the purchase, the Texas Natural Resource Conservation Commission notified Aviall that it would institute enforcement action if Aviall failed to remediate the property. Aviall promptly cleaned up the site and now seeks reimbursement from Cooper. In my view, the Court unnecessarily defers decision on Aviall's entitlement to recover cleanup costs from Cooper.

In *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 818 (1994), all Members of this Court agreed that §107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U. S. C. §9607, "unquestionably provides a cause of action for [potentially responsible persons (PRPs)] to seek recovery of cleanup costs." The Court rested that determination squarely and solely on §107(a)(4)(B), which allows *any* person who has incurred costs for cleaning up a hazardous waste site to recover all or a portion of those costs from any other person liable under CERCLA.[1]

---

[1] Key Tronic, a PRP, asserted a cost-recovery claim under §107(a) to recoup approximately $1.2 million in costs that it allegedly incurred

2       COOPER INDUSTRIES, INC. *v.* AVIALL SERVICES, INC.

GINSBURG, J., dissenting

The *Key Tronic* Court divided, however, on the question whether the right to contribution is implicit in §107(a)'s text, as the majority determined, or whether §107(a) expressly confers the right, as the dissenters urged. The majority stated: Section 107 *"implies*—but does not expressly *command*—that [a PRP] may have a claim for contribution against those treated as joint tortfeasors." 511 U. S., at 818, and n. 11 ((emphasis added)). The dissent maintained: "Section 107(a)(4)(B) states, as clearly as can be, that '[c]overed persons . . . shall be liable for . . . necessary costs of response incurred by any other person.' Surely to say that A shall be liable to B is the *express* creation of a right of action." *Id.*, at 822. But no Justice expressed the slightest doubt that §107 indeed did enable a PRP to sue other covered persons for reimbursement, in whole or part, of cleanup costs the PRP legitimately incurred.

In its original complaint, Aviall identified §107 as the federal-law basis for an independent cost-recovery claim against Cooper, and §113 as the basis for a contribution claim. App. 8A, 16A–17A. In amended pleadings, Aviall alleged both §§107 and 113 as the federal underpinning for its contribution claim. *Id.*, at 27A, 48A. Aviall's use of §§113 and 107 in tandem to assert a contribution claim conformed its pleading to then-governing Fifth Circuit precedent, which held that a CERCLA contribution action arises through the joint operation of §107(a) and §113(f)(1). See *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F. 3d 917, 924 (2000) ("[W]hile section 113(f) is the

---

cleaning up its site "at its own initiative." *Key Tronic Corp. v. United States*, 984 F. 2d 1025, 1026 (CA9 1993). Although Key Tronic settled a portion of its liability with the Environmental Protection Agency (EPA), the claim advanced in Key Tronic's §107(a) suit rested on remedial action taken before the EPA's involvement, remediation that did not figure in the settlement. *Id.*, at 1026–1027; *Key Tronic Corp. v. United States*, 511 U. S. 809, 811–812 (1994).

Cite as: 543 U. S. ____ (2004)    3

GINSBURG, J., dissenting

vehicle for bringing a contribution action, it does not create a new cause of action or create any new liabilities. Rather, it is a mechanism for apportioning costs that are recoverable under section 107." (footnote omitted)). A party obliged by circuit precedent to plead in a certain way can hardly be deemed to have waived a plea the party could have maintained had the law of the Circuit permitted him to do so. But cf. *ante*, at 9–10.

   In the Fifth Circuit's view, §107 supplied the right of action for Aviall's claim, and §113(f)(1) prescribed the procedural framework. 312 F. 3d 677, 683, and n. 10 (2002) (stating that §107 "impliedly authorizes a cause of action for contribution" and §113(f) "govern[s] and regulate[s]" the action (citing *Geraghty and Miller*, 234 F. 3d, at 924) (internal quotation marks omitted)); see §113(f)(1) (calling for the governance of "Federal law" and the application of "the Federal Rules of Civil Procedure," and specifying that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate"). Notably, Aviall expressly urged in the Court of Appeals that, were the court to conclude that §113(f)(1)'s "during or following" language excluded application of that section to this case, Aviall's suit should be adjudicated independently under §107(a). See Response of Appellant Aviall Services, Inc., to the *Amicus Curiae* Brief of the United States in No. 00–10197 (CA5), p. 24 ("[P]arties who are excluded from seeking contribution under section 113(f)(1) must therefore have available to them the broader right of cost recovery [covering both full recovery and contribution] under section 107(a)."); cf. *Key Tronic*, 511 U. S., at 816 ("[T]he statute now expressly authorizes a cause of action for contribution in §113 and impliedly authorizes a similar and somewhat overlapping remedy in §107.").

   I see no cause for protracting this litigation by requiring

4    COOPER INDUSTRIES, INC. v. AVIALL SERVICES, INC.

GINSBURG, J., dissenting

the Fifth Circuit to revisit a determination it has essentially made already: Federal courts, prior to the enactment of §113(f)(1), had correctly held that PRPs could "recover [under §107] a proportionate share of their costs in actions for contribution against other PRPs," 312 F. 3d, at 687;[2] nothing in §113 retracts that right, *ibid.* (noting that §113(f)'s saving clause preserves all preexisting state and federal rights of action for contribution, including the §107 implied right this Court recognized in *Key Tronic*, 511 U. S., at 816). Accordingly, I would not defer a definitive ruling by this Court on the question whether Aviall may pursue a §107 claim for relief against Cooper.

---

[2]The cases to which the Court refers, *ante*, at 12, *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630 (1981), and *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U. S. 77 (1981), do not address the implication of a right of action for contribution under CERCLA. *Texas Industries* concerned the Sherman and Clayton Acts, 451 U. S., at 639–646; *Northwest Airlines*, the Equal Pay Act and Title VII, 451 U. S., at 90–99. A determination suitable in one statutory context does not necessarily carry over to a different statutory setting.

CERTIFICATE OF SERVICE

I certify that I have this day served upon counsel for plaintiff, Lou Bonsangue, Jacobi & Case, P.C., 300 Bic Drive, Milford, CT 06460, a copy of the foregoing Notice of New Authority, by mailing same first class, postage prepaid to the address set forth above.

Date: December 17, 2004

Susan H. Shumway (CT#03102)
Shumway & Spencer, LLC
59 Wilton Road
Westport, CT 06880
(203) 221-8710
Shumwaysus@aol.com