UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE KALADISH,<br>    Plaintiff,<br><br>v.<br><br>UNIROYAL HOLDING, INC., and<br>UNIROYAL, INC.,<br>    Defendants. | :<br>:<br>:<br>:  Civil Action No. 3:00 CV 854 (CFD)<br>:<br>:<br>:<br>: |

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Lawrence Kaladish brought this action alleging that a corporate predecessor to the defendant corporations wrongfully stored and disposed of hazardous wastes on a parcel of property Kaladish owns in Naugatuck, Connecticut (hereafter, "Kaladish Property" or "property"). Kaladish's Second Amended Complaint contains nine counts: Count One alleges that the defendants are liable for the cost of cleaning the property, pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; Counts Two, Three, and Four allege the Connecticut state law torts of negligence, trespass, and nuisance ; Count Five alleges that the defendants are responsible for cleanup and containment costs for the property under Conn. Gen. Stat. § 22a-452; Count Six seeks declaratory and equitable relief for the defendants' impairment of the public trust in natural resources under Conn. Gen. Stat. § 22a-16; Count Seven alleges that the defendants' contamination of the property constitutes negligence per se under Connecticut state law; Count Eight alleges that the defendants' activities on the property constituted abnormally dangerous activities, thus exposing them to strict liability under Connecticut law; and Count Nine alleges

1

violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972.[1] Kaladish seeks declaratory and injunctive relief directing the defendants to remediate the contamination of his property, compensatory and punitive damages, and costs. The defendants have filed a motion for summary judgment.

## I.   Background[2]

From June 8, 1949 to March 19, 1970, the Kaladish Property was owned by William and Clarice Gniazdowski, who used the land to operate a pig farm. The Gniazdowskis also collected and disposed of Naugatuck town refuse on the site. From 1956 until 1958, William Gniazdowski leased a separate portion of the property to George Clark, to be used as a dumping site for Clark's trucking company. Clark had a contract to haul waste from the Footwear Division of the United States Rubber Company ("USRC")[3]; he used the Kaladish Property to dump approximately 1.5 million pounds per month of that waste, which included rubber scraps, trimmings, shoes, rubber-coated canvas, rubberized aircraft components, and cafeteria garbage. Some of those materials were burned, while others were buried. In the same portion of the property, 2000 gallons of the chemical solvent methyl ethyl ketone ("MEK") were deposited.[4]

---

[1] The Court's jurisdiction is based on 28 U.S.C. § 1331 as to Counts One and Nine, and on 28 U.S.C. § 1367 as to the remaining counts of the Second Amended Complaint.

[2] The following facts are taken from the parties' Local Rule 9(c) (now Local Rule 56) statements and related documents, and are undisputed unless otherwise noted.

[3] The Footwear Division of the United States Rubber Company closed permanently on December 22, 1977. Its alleged successors in corporate liability are the named defendants Uniroyal Holding, Inc. and Uniroyal, Inc (hereafter, collectively "Uniroyal").

[4] Kaladish alleges that the MEK stemmed from USRC operations, and has been acknowledged by Uniroyal to have been part of the company's waste stream during that period, though Uniroyal does not admit that any MEK was dumped at the Kaladish Property. On

In 1957, neighbors sued the Gniazdowskis for nuisance, seeking to enjoin further use of the pig farm or the dumping sites. While the continued use of the pig farm was permitted, the Connecticut Court of Common Pleas enjoined any further waste dumping or burning on the property by either the Gniazdowskis or George Clark. See Nixon v. Gniazdowski, No. 14825 (Memorandum of Decision, Conn. C.P. Feb. 25, 1957). That decision was later affirmed by the Connecticut Supreme Court. See Nixon v. Gniazdowski, 138 A.2d 796, 145 Conn. 46 (1958).

The Gniazdowskis sold the Kaladish Property to George Clark in 1970, who may then have used the land in connection with his fuel oil business. The property passed through several other owners before being purchased by Kaladish and his wife on December 10, 1976.[5] Kaladish claims that he first became aware of the property's history and the fact that wastes had been disposed there sometime in the early 1980s. He is now seeking relief from the defendants, due to USRC's alleged past contamination.

**II.     Standard of Review**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

---

occasion, Clark also dumped cellulose wastes from the Peter Paul Mounds company on the property.

[5] Kaladish and his wife later divorced, and he took sole title to the property by a deed executed on April 7, 1987.

56(c)).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323.

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**III.  Discussion**

Each claim is discussed in turn, beginning with the federal law claims.

**A.  CERCLA Claims**

The Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") provides "two primary mechanisms for private parties to recover costs incurred in response to the release or threatened release of a hazardous substance: a cost recovery action under § 107(a), and suit for contribution under § 113(f)."  Syms v. Olin Corp., 408 F.3d 95, 100 (2d Cir. 2005).  Kaladish brings claims under both sections.[6]

The Supreme Court recently held that a private party may not obtain a judgment for

---

[6] CERCLA is codified at 42 U.S.C. § 9601 et seq.  Its provisions, however, often are referenced by the section numbers of the original Act (e.g., § 107 rather than 42 U.S.C. § 9607).  The Court will cite to sections of the Act whenever possible, but also refers to the corresponding sections of the United States Code.

contribution under § 113(f) unless that party has been sued itself under § 106 or § 107 of CERCLA.[7] See Cooper Indus. v. Aviall Servs., 125 S. Ct. 577, 580 (Dec. 13, 2004).  It is undisputed that Kaladish has not been sued under CERCLA.  Under Cooper, therefore, Kaladish is prohibited from bringing a contribution claim.  The Court thus grants summary judgment for the defendants as to Kaladish's § 113(f) claim.

Turning to Kaladish's cost recovery claim under § 107 of CERCLA, a private party may bring suit to recover "necessary costs" of responding to a release or threatened release of hazardous substances against any of four classes of "potentially responsible persons" ("PRPs"): (1) current owners and operators of contaminated facilities; (2) previous owners and operators of contaminated facilities; (3) generators of hazardous substances; and (4) transporters of hazardous substances.  See 42 U.S.C. § 9607(a).  CERCLA "imposes strict liability without regard to causation on persons who fall within at least one of the four categories of potentially responsible persons." Bedford Affiliates v. Sills, 156 F.3d 416, 425 (2d Cir. 1998).  Kaladish claims that the defendants are strictly liable as PRPs due to the United States Rubber Company's history as a generator of hazardous substances.

The defendants argue that Kaladish is precluded from suing them under § 107 since he currently owns the property and is himself a potentially responsible person.  The Second Circuit has long held that one PRP may not bring a § 107 claim against another: "[O]ne potentially responsible person can never recover 100 percent of the response costs from others similarly situated since it is a joint tortfeasor—and not an innocent party—that ultimately must bear its pro

---

[7] Section 106 is the CERCLA provision allowing the federal government to compel cleanup of a contaminated site; as discussed before, § 107 is the provision allowing the Government or a private party to recover costs of responding to a contaminated site.

rata share of cleanup costs under § 107 (a)." Bedford Affiliates, 156 F.3d at 424; see also Prisco v. A & D Carting Corp., 168 F.3d 593, 603 (2d Cir. 1999). Plaintiffs who also qualify as PRPs are "limited instead to an action for contribution . . . under CERCLA § 113(f)(1)." Prisco, 168 F.3d at 603.[8]

Kaladish argues that he is not precluded from bringing a § 107 action because, under one of CERCLA's affirmative defenses, he should be considered an "innocent purchaser" rather than a PRP. CERCLA provides several affirmative defenses by which potentially responsible persons may escape liability. Kaladish claims that he is entitled to immunity under the affirmative defense of CERCLA § 107(b)(3), which provides that a PRP will not be considered liable if he can establish that the release or threatened release was caused solely by

> an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the [PRP] . . . [and] the [PRP] establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and

---

[8] Of course, as previously noted, the Supreme Court decision in Cooper Indus. v. Aviall Servs. held that a plaintiff now must be the subject of a suit under § 106 or § 107 before he or she in turn may seek contribution under § 113. The Second Circuit noted this potential whipsaw in Syms v. Olin Corp., 408 F.3d 95, 106 n.8 (2d Cir. 2005): "Together, Cooper Industries and Bedford Affiliates leave a PRP with no mechanism for recovering response costs until proceedings are brought against the PRP. . . . The combination of Cooper Industries and Bedford Affiliates, if the latter remains unaltered, would create a perverse incentive for PRPs to wait until they are sued before incurring response costs."

Nonetheless, Bedford Affiliates remains good law in the Second Circuit. The majority of circuit courts agree with the Second Circuit that a PRP may not sue another PRP under CERCLA § 107. See Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 349-356 (6th Cir. 1998); Pneumo Abex Corp. v. High Point, T. & D. R. Co., 142 F.3d 769, 776 (4th Cir. 1998); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1301-1306 (9th Cir. 1997); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1120-1124 (3d Cir. 1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 n.7 (11th Cir. 1996); United States v. Colorado & E. R. Co., 50 F.3d 1530, 1534-1536 (10th Cir. 1995); United Techs. Corp. v. Browning-Ferris Indus., 33 F.3d 96, 98-103 (1st Cir. 1994).

> circumstances, and (b) he took such precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607 (b)(3).

The Court finds that Kaladish does not satisfy the criteria for immunity under § 107(b)(3) based on the undisputed facts. That provision requires that the third party's act or omission causing a release can not have occurred within the context of a contractual relationship existing directly or indirectly between the third party and the party seeking to avoid liability. Kaladish is at least indirectly contractually related to the releases at issue here. The acts of which Kaladish complains stem from former property owners William Gniazdowski and George Clark's various contracts providing for waste disposal on the property. Both Gniazdowski and Clark were predecessors in Kaladish's chain of title when he purchased the property. Further, the judgment in <u>Nixon v. Gniazdowski</u>, enjoining "further dumping of waste materials and the burning or burying of the same" on the property, was recorded in the Naugatuck land records on or about March 16, 1970, approximately six years before Kaladish purchased the property. <u>See</u> <u>Nixon v. Gniazdowski</u>, No. 14825 (Judgment, Conn. C.P. Feb. 25, 1957).[9]

CERCLA's definition explaining the terms used in § 107(b)(3) states that the term "contractual relationship" includes, but is not limited to,

> land contracts, *deeds* or other instruments transferring title or possession, *unless* the real property on which the facility concerned is located was acquired by the [party] after disposal or placement of the hazardous substance on, in, or at the facility, *and* one or more of the [following] circumstances . . . is also established by the [party] by a preponderance of the evidence:
> > I) at the time the [party] acquired the facility the [party] did not know and had no reason to know that any hazardous substance which is the subject

---

[9] Kaladish admitted in his Local Rule 9(c) statement that this judgment had been recorded in the land records for his property. <u>See</u> Doc. #46.

7

>   of the release or threatened release was disposed of on, in, or at the facility.
>   ii) the [party] is a government entity which acquired the property by escheat, or through any other involuntary transfer or acquisition . . .
>   iii) the [party] acquired the facility by inheritance or bequest.

42 U.S.C. § 9601(35)(A) (emphases added). While Kaladish certainly purchased the property after the United States Rubber Company dumping took place, he has not presented facts which would establish any of the remaining circumstances in § 9601(35)(A).[10] By virtue of the Nixon v. Gniazdowski judgment being part of the pertinent land records at the time of his purchase, Kaladish certainly had reason to know that hazardous substances could be present at the site. Indeed, Kaladish admitted in his Local Rule 9(c) statement that he possesses no evidence of waste disposal at the property that contradicts the Court of Common Pleas' findings in Nixon. He further admitted that he made no inquiries regarding the property before purchasing it; did not examine any court records pertaining to the property before purchase; and either failed to perform a title search or cannot remember conducting one before his purchase. See Doc. # 46. Due to the link between the dumping at the site authorized by previous owners of the property, the judgment delineating and enjoining further such dumping being recorded, and Kaladish's taking title to the property after the judgment's recording date, Kaladish does not qualify for immunity from liability under CERCLA § 107(b)(3).[11] See also Bedford Affiliates, 156 F.3d at 425 (holding that

---

[10] It also is undisputed that § 9601(35)(A)(ii) and (iii) do not apply here, as Kaladish neither is a government entity nor acquired the property through inheritance or bequest.

[11] The Court further notes that, apart from the existence of a contractual relationship, Kaladish has failed to present facts which could establish by a preponderance of evidence the additional criteria required by § 107(b)(3), that he exercised due care with respect to the hazardous substances concerned and that he took all precautions against the foreseeable consequences of the prior dumping. Kaladish admitted in his Local Rule 9(c) statement that since taking title to the property, he has taken no actions to contain, remove, or prevent the release of any hazardous substances on the property. See Doc. # 46.

the "innocent landowner" defense under § 107(b)(3) does not apply to persons who acquire a site with "constructive knowledge of pre-existing hazardous conditions").

Kaladish is not entitled to the affirmative defense provided by § 107(b)(3). Therefore, as the current owner of the property, he must be considered a potentially responsible person under CERCLA § 107. Bedford Affiliates makes clear that one PRP may not pursue a § 107 claim against another PRP. The Court also grants summary judgment for the defendants as to Kaladish's claim under § 107.

    B.    **RCRA Claims**

Kaladish also seeks an order directing the defendants to remediate the property pursuant to the Resource and Conservation Recovery Act of 1976 ("RCRA"), codified at 42 U.S.C. § 6972. RCRA "is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC Western, Inc., 516 U.S. 479, 483 (1996). Unlike CERCLA, RCRA "is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards," but rather to ensure that generated hazardous waste is properly stored and disposed. Id.

RCRA contains a citizen suit provision which allows a private party to sue any past or present waste generator, transporter, or disposal site owner "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Remediation costs are not available in a RCRA action; a court only may order a mandatory or prohibitory injunction relating to cleanup efforts. See Meghrig, 516 U.S. at 484.

A RCRA plaintiff must demonstrate that a defendant's specific waste "was of a type that could contribute to an imminent and substantial endangerment to health or the environment that may exist." Prisco v. A & D Carting Corp., 168 F.3d 593, 609 (2d Cir. 1999). In other words, "particular defendants" must be "connected to particular waste." Id. Kaladish has not specified what substances are the subject of his RCRA claim, although at various points his papers claim to link the defendants to solid rubber waste and the chemical solvent MEK. The Court will consider these two types of waste in evaluating Kaladish's RCRA claim.[12]

Kaladish has failed to create a genuine dispute of material fact as to whether MEK constitutes an imminent and substantial endangerment on the site. The plaintiff's expert conducted a site evaluation, specifically looking for the presence of MEK. None of the samples taken during that evaluation, however, detected MEK on the property. The only evidence supporting plaintiff's claim of MEK posing an imminent and substantial endangerment is that a preliminary site assessment conducted in 1981 found "trace" amounts of MEK in two drums on the property. See Doc. # 46 at Exh. B. As that data is now almost 25 years old and has not been subsequently corroborated, it is insufficient to satisfy Meghrig's requirement that an imminent and substantial endangerment be one that "threaten[s] to occur immediately . . . . the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents

---

[12] At one point in his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Kaladish claims that the defendants "have disposed of millions of pounds of hazardous substances and solid wastes, including . . . the solvent methyl ethyl ketone and *perhaps other chemicals*." See Doc. # 46 at 18 (emphasis original). Kaladish never has defined what those other chemicals might be. This "link" is too speculative to satisfy the requirement of Prisco. Kaladish also admitted in his Local Rule 9(c) statement that methyl ethyl ketone ("MEK") was the only solvent waste known by his expert consultant to be associated with Uniroyal. Therefore, the Court only will take into account the presence of solid wastes and MEK for the purposes of Kaladish's RCRA claim.

such a danger." Meghrig, 516 U.S. at 485-86.

Nor has Kaladish shown that any other substance linked to Uniroyal constitutes an imminent and substantial endangerment to health or the environment. Kaladish's expert could not find any soil contamination at the site that exceeded governmental standards, save two soil samples that showed elevated lead levels. Those lead samples did not come from the area of the property where Uniroyal rubber wastes were located.[13] Neither the plaintiff's expert nor any governmental entity has conducted a groundwater test at the property, and therefore there is no data showing any groundwater contamination. See Docs. # 43, 46 (Parties' Local Rule 9(c) Statements). In 1996, the Connecticut Department of Public Health and the federal Agency for Toxic Substances and Disease Registry concluded a Health Consultation on the property, concluding that there was no public health threat on the site. That same year, the Environmental Protection Agency also concluded that there was "no immediate threat to public health and the environment at this time presented at this site." See Doc. # 43 at Exh. G, H.

Kaladish bases his contention of the property's imminent danger upon a July 10, 2000 letter from the Connecticut Department of Environmental Protection ("DEP"), in which the DEP wrote that the property continued to be listed on the federal Superfund inventory and that "this site may warrant cleanup under the federal Superfund program." See Doc. #46 at Exh. H.[14] Since 2000, however, neither the federal nor state government has conducted further investigation at the site, confirmed that the property necessitates cleanup, or taken any legal

---

[13] Nor, as previously discussed, has Kaladish demonstrated any link between waste deposited by the defendants and lead.

[14] The DEP letter provides no specific information as to what kind of contamination exists on the site, nor to whom that contamination might be attributed.

action against persons associated with the site's contamination. The 2000 letter alone, without any further evidence linking Uniroyal to particular and presently threatening contamination, does not create a genuine dispute of material fact as to whether Uniroyal has contributed to "an imminent and substantial endangerment to health or the environment." Therefore, the Court grants summary judgment for the defendants on Kaladish's RCRA claim.

    C.    **State Law Claims**

Because it has disposed of all the federal claims before it, the Court declines to exercise supplemental jurisdiction over Kaladish's remaining state claims. See 28 U.S.C. § 1367(c)(3). Both the Second Circuit and the Supreme Court agree that when all federal claims are dismissed, the "state claims should be dismissed as well." Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

**IV.    Conclusion**

The defendants' Motion for Summary Judgment [Doc. # 41] is GRANTED. The Clerk is directed to order judgment in favor of the defendants and close this case.

So ordered this ___9th___ day of August 2005 at Hartford, Connecticut.

                                    /s/ CFD
                                    **CHRISTOPHER F. DRONEY**
                                    **UNITED STATES DISTRICT JUDGE**